# ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeal of -- ) | |
| ) | |
| Aerospace Facilities Group, Inc. ) | ASBCA No. 61026 |
| ) | |
| Under Contract No. W912NW-12-C-0035 ) | |

APPEARANCES FOR THE APPELLANT:      Wojciech Z. Kornacki, Esq.
                                    Theodore P. Watson, Esq.
                                      Watson & Associates, LLC
                                      Aurora, CO

APPEARANCES FOR THE GOVERNMENT:     Raymond M. Saunders, Esq.
                                      Army Chief Trial Attorney
                                    ChristinaLynn E. McCoy, Esq.
                                      Trial Attorney

## OPINION BY ADMINISTRATIVE JUDGE SHACKLEFORD
## ON THE GOVERNMENT'S MOTION TO DISMISS FOR LACK OF JURISDICTION

The Board, *sua sponte*, questioned whether the Board has jurisdiction over this appeal. The government subsequently moved to dismiss for lack of jurisdiction, asserting that, because the appeal was filed more than 90 days after the contracting officer's (CO's) contract termination for cause was emailed to and received by appellant, it is untimely. Appellant opposes the motion. We conclude that the government engaged in actions to vitiate the finality of the termination decision and deny the government's motion.

## STATEMENT OF FACTS (SOF) FOR PURPOSES OF THE MOTION

1. The Department of the Army, Corpus Christi Army Depot (CCAD) (Army or government), awarded Contract No. W912NW-12-C-0035 (contract) to Aerospace Facilities Group, Inc. (AFG or appellant) on September 27, 2012, for the provision and installation of helicopter paint-booth equipment, booth monitoring systems, and a personnel protection system to the Aircraft Corrosion Control Facility (ACCF) (R4, tab 1).

2. AFG's representative, Dennis R. Robinson, Director of Engineering & Maintenance Services, exchanged emails and letters related to the contract with the government from September 6, 2012 through July 27, 2016, consistently utilizing the same mailing address on Paradise Road in Las Vegas, Nevada (Las Vegas address) (R4, tabs 2-152, 157).

3. The CO issued Modification No. P00008 (Mod. 8) dated August 4, 2016, to terminate the contract for cause (R4, tab 158). Mod. 8 states that acceptance of delinquent goods would be solely for mitigation of damages (R4, tab 158 at 3 of 10). Mod. 8 further states that this was the final decision of the CO and provided the appeal rights required by FAR 33.211(a)(4)(v) (*id.*). Appellant received Mod. 8 on August 4, 2016, via email (compl. ¶ 35; R4, tab 157 at 1-2; app. resp. at 3, ¶ 14).

4. In an email dated August 4, 2016, and received by the CO on the same day, AFG wrote the CO concerning the termination notice stating, in relevant part:

> Attached is the letter in response to the Show [C]ause
> Letter dated 19 July 2016.
>
> This letter was sent to you back on 27 July 2016, and I'm
> not sure what happen[ed] to it or why you did not receive
> it.
>
> Please let me know if there are any changes to cancelled
> contract.

(R4, tab 157 at 1-2)

5. The CO mailed a copy of Mod. 8 to appellant via U.S. Postal Service (USPS) certified mail with return receipt to the attention of Mr. Robinson at the Las Vegas address (R4, tab 159 at 3). The return receipt was unsigned; however, the USPS website entry for the certified mail tracking number indicates that the package was "Delivered, Left with Individual" on August 8, 2016 (gov't mot., ex. G-6). Appellant asserts that the mailed copy of Mod. 8 was not received by AFG (app. resp. at 3, ¶ 16).

6. By letter dated August 11, 2016, the CO invited AFG to deliver the items under the contract and to contact the Army to discuss reasonable proposals concerning the termination notice, as follows:

> The Government is willing to accept delivery of
> items under the contract to mitigate AFG's liability under
> the contract and appreciates your willingness to seek a
> solution to complete this effort and effect delivery under
> contract W912NW-12-C-0035. However, until such time
> as delivery is accomplished, the Termination for Cause
> will stand. You should contact this office no later than

24 August 2016 to discuss questions or reasonable proposals concerning the Termination for Cause.

(R4, tab 160 at 2)

7. By email dated August 24, 2016, appellant replied to the CO as follows:

Aerospace Facilities Group, Inc. has received and reviewed the government response to my letter for the Notice to Show Cause.

I [sic] order to rectify this problem without going through the legal process of appeals, the easy solution is to release the last two payments agreed to in the contract for the amount still due to the equipment supplier. Once this is paid the equipment can start to be delivered to Corpus Christi.

At no time did Aerospace Facilities Group delay this contract or the delivery of this equipment. The delay and position we are in today falls back on the government holding back contractual payments as hostage for another contract at Corpus Christi.

Aerospace Facilities Group will be [filing] a formal protest for the Notice to Show Cause and contract cancellation. I hope we can work work [sic] through this so that this does not come to further legal issues. We will notify CCAD contracting of our notice of appeal once it is filed.

I will be traveling for the next few days but [I] am available on my cell phone and through email.

(R4, tab 162)

8. By email dated August 25, 2016, Army division chief for the reach-back contract support (Army division chief) wrote appellant as follows:

My name is Ben Henson.... I am following up the voicemail I left on your cell phone. If you are available I would love to speak with you concerning contract W912NW-12-C-0035. I am very optimistic that we can work together to develop a solution that benefits all parties

3

and best supports the war fighter. Please let me know when you are available. I look forward to speaking with you.

(App. resp., ex. A-3)

9. By affidavit, appellant's representative, Dennis R. Robinson, described three telephone conferences between AFG and the government held on August 25, August 29, and August 31, 2016, stating, in relevant part:

> 21. On August 25, 2016, I received a phone call from Mr. Ben A. Henson, Division Chief, Army Aviation Logistics. AFG also received an email from him indicating he would like to discuss contract W912NW-12-C-0035. The email and phone conversation indicated that the Army and AFG could work together to develop a solution that would benefit all parties' concerns in this matter. I believed that this conversation indicated that the Government was working with us to achieve a resolution to the issue that was not a termination.
>
> 22. On August 29, 2016, I contacted Mr. Henson by phone and had a phone conference with him and other people in his office. We discussed the complexity of the equipment....
>
> 23. On that call, we also discussed the issue of delivering the equipment to CCAD, whereas I indicated that the last contractual payments needed to be made so we could pay our suppliers so the equipment could be released and delivered. I indicated to Mr. Henson that AFG was able and willing to proceed with the contract and that cancelling it was just a vindictive move on the part of the CCAD contracting and Ms. Ramirez. Mr. Henson said they would discuss the matter and get back to me for further discussions.
>
> 24. On August 31, 2016, AFG received a call from Mr. Ben Henson's office. In that call, Mr. Henson was not present, and it was instead handled by an Army Attorney and two other people in the room. During that call, AFG was told that the ACCF facility was not completed and the installation was not possible, but the Government could

4

take possession of the paint booth equipment. I again explained to the Government that once the last payments were made for the equipment, it would all be shipped to CCAD.

25. On that call, I again explained that their reasoning for cancelling the contract was vindictive and had nothing to do with the building not being completed.... The phone conference was ended at that point and I sent Mr. Henson an email indicating that AFG would be keeping the lines of communication open and that we were willing to come to an agreement that would benefit all parties.

26. Given that the Government subsequently contacted me and discussed options to resolve the matter, AFG concluded that the Government had not yet made a definitive determination on whether to terminate the contract for default. AFG relied on the Government's actions, which made it seem as though it was reconsidering the termination.

(App. resp., ex. A-1 at 3-4)

10. By letter dated September 13, 2016, the CO issued a final decision demanding AFG repay $7,809,984.15 for unliquidated government installment payments (R4, tab 164). Among other things, the letter summarized conversations with appellant after the termination to discuss reasonable proposals, negotiations, and possible delivery of the paint-booth equipment. The CO stated, in relevant part:

> After the Government issued the Termination for Cause, AFG reached out to the Government to open settlement negotiations. The Government indicated its willingness to discuss negotiations with AFG and invited AFG to discuss any reasonable proposals concerning the Termination.
>
> The Government spoke with you, as Director Engineering & Maintenance Services, Aerospace Facilities Group, on two occasions. During the last call on August 31, 2016, the Government confirmed to you that the Aircraft Corrosion Control Facility...at CCAD was not completed and installation was not possible but that the Government was able to take possession of the paint booths and had adequate storage. The Government

5

provided a POC for you to call to schedule delivery so as to start the delivery process and mitigate liability for the installment payments AFG received under the contract. When the Government asked you if AFG was going to deliver any paint booths, you responded that AFG would not make any deliveries.

As of the date of the Termination for Cause, AFG has received $7,809,984.15 in Government installment payments, which AFG failed to liquidate by delivery of goods as specified by the contract. In accordance with the Federal Acquisition Regulation (FAR) Clause, 52.232-30, Installment Payments for Commercial Items, paragraph g, "If the contract is terminated for cause, the Contractor shall, on demand, repay to the Government the amount of unliquidated installment payments.["]

As a result, demand is hereby made upon AFG to repay the Government the sum of $7,809,984.15, which is the amount of unliquidated Government installment payments made to AFG....

(*Id.* at 1-2) The letter advised appellant of its right to appeal, but appellant did not appeal to the Board from the government's demand for payment.

11. By email on November 3, 2016, appellant sent a notice of appeal to the Government Accountability Office (GAO) with a copy to the CO (app. resp. at 6, ¶ 30; gov't mot., ex. G-10). The CO received appellant's appeal notice on that same day (gov't mot., ex. G-11, ¶ 12). The email stated, in relevant part:

Dear CAB,

Aerospace Facilities Group, Inc[.] is formally filling [sic] an appeal on the termination of cause for contract W912NW-12-C-0035.

The Department of the Army, Corpus Christi Army Depot Contracting office letter for termination modification for the subject contract and modification are attached to this appeal letter.

(Gov't mot., ex. G-10)

6

12. In an email dated and received by the Board on November 8, 2016, AFG stated it was formally filing an appeal of the August 4, 2016 Mod. 8 termination for cause. This was 91 days after receipt of said termination CO's final decision (COFD).

## DECISION

The government contends that we do not have jurisdiction over this appeal because the appeal was not filed within 90 days of appellant's receipt of the emailed CO's termination notice (gov't mot. at 9-11). Appellant counters that the CO sending the termination through email violates FAR 33.211(b) (app. resp. at 14). Appellant also asserts that the CO sending multiple copies of the termination caused confusion concerning the appeal deadline and the last termination sent should begin the appeal deadline (*id.* at 17-18). Appellant also argues that its written communication to the CO requesting reconsideration of the termination tolled the appeal deadline (*id.* at 12-13). In addition, appellant asserts that the government engaged in actions after the termination notice was received which vitiated the finality of the termination and, thus, the appeal is timely (*id.* at 7-11).

Under the Contract Disputes Act (CDA), 41 U.S.C. § 7104(a), the 90-day period in which to appeal a CO's decision to the Board is jurisdictional and may not be waived. *See Cosmic Construction Co. v. United States*, 697 F.2d 1389, 1390-91 (Fed. Cir. 1982); *Maria Lochbrunner*, ASBCA Nos. 57235, 57236, 11-2 BCA ¶ 34,783.

Appellant argues that the CO should have sent the termination only through certified mail and that sending it through both email and certified mail violates FAR 33.211(b), which "states that, '[t]he contracting officer *shall* furnish a copy of the decision to the contractor by certified mail, return receipt requested, *or* by any other method that provides evidence of receipt'" (app. resp. at 14) (emphasis in app. resp.). Specifically, appellant argues:

> The "or" language expressly refers to the method of proving receipt of the certified mail. The FAR does not give the CO discretion to substitute issuing a decision by certified mail with issuance of the COFD through email.

(*Id.*)

This Board has consistently held that the government may transmit a final decision to the contractor through fax, hand delivery, or email with evidence of receipt. *See Tyger Construction Co.*, ASBCA Nos. 36100, 36101, 88-3 BCA ¶ 21,149 (fax transmission of the final decision was adequate to prove receipt where the CO's agent confirmed receipt by telephone immediately upon completion of the transmission); *Military Aircraft Parts*, ASBCA No. 60308, 17-1 BCA ¶ 36,680 (email

7

sufficient for transmitting the COFD; however, the government failed to meet its burden to show the contractor received the COFD); *Singleton Enterprises*, ASBCA No. 58235, 14-1 BCA ¶ 35,554 (the 90-day clock started to run when the contractor received the COFD through email because the evidence showed no COFD was sent via certified mail as contended by appellant).

Contractors may request favored forms of communication with the government and in those situations, it may be prudent for the government to adhere to the contractor's request. *See Mid-Eastern Industries, Inc.*, ASBCA No. 51287, 98-2 BCA ¶ 29,907. However, in this appeal, appellant has not shown that it requested that communications from the government be delivered only by certified mail. In addition, the record is replete with email communications from September 6, 2012 through July 27, 2016 between appellant and the government. (SOF ¶ 2)

The government bears the burden to establish the contractor's date of receipt of the final decision. *See Singleton*, 14-1 BCA ¶ 35,554 at 174,227. The government has met its burden. It is undisputed that appellant received the CO's termination via email on August 4, 2016 (SOF ¶¶ 3, 4). Yet, appellant filed its notice of appeal with this Board on November 8, 2016, 91 days after appellant received the emailed termination (SOF ¶ 12).

Appellant next argues that sending multiple copies of the termination caused confusion concerning the appeal deadline (app. resp. at 17-18). However, appellant has stated that it did not receive the paper copy of the termination and has not explained how the second copy of the termination, which it did not receive, caused confusion as to the appeal deadline (SOF ¶ 5).

Next, we consider whether appellant's emails to the CO or GAO afforded proper notice of appeal to this Board. Filing an appeal with the CO may satisfy the Board's notice requirement. *See Hellenic Express*, ASBCA No. 47129, 94-3 BCA ¶ 27,189 at 135,503 ("filing an appeal with the [CO] is tantamount to filing with the Board"). Adequate notice to the CO shall be in writing, express dissatisfaction with the CO's decision, and, manifest an intent to appeal the decision to a higher authority. *See, e.g., McNamara-Lunz Vans & Warehouses, Inc.*, ASBCA No. 38057, 89-2 BCA ¶ 21,636 at 108,856 (concluding that a letter stating that "we will appeal your decision through the various avenues open to us" adequately expressed the contractor's intent to appeal as a contractor can only "appeal" to the Board); *cf. Stewart-Thomas Indus., Inc.*, ASBCA No. 38773, 90-1 BCA ¶ 22,481 at 112,836 (stating that the contractor's letter indicating they would appeal to either the Board or the Claims Court was not a notice of appeal because the CDA requires a notice of appeal to express an election of the forum in which it will seek relief). To meet the requirement that notice has been furnished, the Board has historically taken a liberal reading of contractor's

communications to the CO in finding effective appeals. *See Thompson Aerospace, Inc.*, ASBCA Nos. 51548, 51904, 99-1 BCA ¶ 30,232 at 149,570.

Appellant contends that its August 24, 2016 email to the CO meets the established requirements of the Board for giving notice of appeal: (i) the email is within 90 days of receipt of the August 4 termination notice; (ii) it is provided in writing; (iii) expressed dissatisfaction with the termination; and (iv) the email appealed to a higher authority (app. resp. at 24-25).

Appellant's August 24, 2016 email satisfies three of the four requirements to provide notice of appeal: it was timely, it is in writing, and it expresses a dissatisfaction with the August 4 termination notice. However, the email does not satisfy the final requirement of manifesting an intent to appeal the decision to a higher authority. The email states that appellant would like to rectify the termination "without going through the legal process of appeals." Appellant's email requested reconsideration of termination by the government through releasing the last two payments which the contractor would then deliver to Corpus Christi. Appellant's email indicates in the future tense that they will be filing a "formal protest" and appellant will notify the government once an "appeal notice" is filed. (SOF ¶ 7) Appellant unequivocally stated that it wishes to avoid litigation and would notify the government once the appeal is filed. There is nothing in appellant's email that manifests an intent to appeal the termination as of the date of the email. We conclude that appellant's August 24, 2016 email to the CO does not satisfy the requirements of a notice of appeal to the Board.

Next, we consider AFG's November 3, 2016 appeal notice to the GAO. The Board does not possess jurisdiction over appeals filed at other tribunals. *See Carter Safety Consultants, Inc.*, ASBCA No. 60779, 17-1 BCA ¶ 36,669 at 178,552 (no jurisdiction over appeals filed with the GAO); *Waterstone Environmental Hydrology and Engineering, Inc.*, ASBCA No. 57557, 12-1 BCA ¶ 35,028 at 172,142-43 (late appeal to ASBCA dismissed after wrongful appeal to the Civilian Board of Contract Appeals). In any event it was 91 days after receipt of the notice of termination and thus untimely.

Next, we consider AFG's November 3, 2016 appeal notice sent to the CO. Although it is possible that an appeal filed with the CO could be sufficient for jurisdiction, we need not decide that issue because the email was untimely at 91 days after AFG received the notice of termination. (SOF ¶¶ 3, 4, 11) *See A.I.A. Costruzioni S.p.A.*, ASBCA No. 43584, 92-3 BCA ¶ 25,204 at 125,582.

Next, we consider whether AFG's request for reconsideration of the termination vitiated the deadline for a timely appeal to this Board. Appellant argues that its August 24, 2016 letter requests reconsideration; thus, the request vitiated the August 4

9

termination notice (app. resp. at 12). We conclude that appellant's request to the CO to reconsider her final decision is not in itself sufficient to vitiate the termination decision. *See Propulsion Controls Engineering*, ASBCA No. 53307, 01-2 BCA ¶ 31,494 at 155,508 (holding that "it is unreasonable to conclude that a [CO] is reconsidering a final decision simply as a result of a request to do so").

Finally, we consider whether actions by the government vitiated the finality of the final decision.

> While receipt by the [CO] of a request for reconsideration of a decision in itself does not serve to vacate a decision or the period in which to appeal, reconsideration of a decision by the [CO] or creation of a reasonable appearance that the decision is being reconsidered both serve to vacate the earlier decision along with the accompanying appeal period....

*Royal Int'l Builders Co.*, ASBCA No. 42637, 92-1 BCA ¶ 24,684 at 123,135.

The test for vitiation of the finality of a CO's determination "is whether the contractor presented evidence showing it reasonably or objectively could have concluded the CO's decision was being reconsidered." *Sach Sinha and Associates, Inc.*, ASBCA No. 46916, 95-1 BCA ¶ 27,499 at 137,042 (a lack of finality is found where the CO met with the contractor after the issuance of the termination notice; discussed the default termination at the meeting; and requested the contractor to submit settlement alternatives in writing that were proposed at the meeting). The focus is on whether any government action could have reasonably led a contractor to believe that the subject matter was not yet final, thereby making an appeal to the Board unnecessary. However, a demand letter sent by a CO does not vitiate finality of an earlier final decision. *See Communicology, Inc.*, ASBCA No. 47934, 95-2 BCA ¶ 27,640 at 137,787-88.

Appellant argues that the finality of the termination notice was vitiated because the Army held telephonic conferences with AFG, invited AFG to discuss reasonable proposals to resolve the situation, discussed future delivery of the paint-booth equipment, and led AFG to believe that the termination could be reversed (app. resp. at 8-10). The government counters that written communications with appellant were to mitigate AFG's liability and not to reconsider the termination notice and that the government also made clear that the termination notice was the final decision of the CO (gov't reply br. at 6).

The fact that the record does not reveal that the CO ever used the word "reconsider" does not mean that the government's actions did not lead AFG to believe

the government was reconsidering the decision. *See CP of Bozeman, Inc., dba Maintenance Patrol*, ASBCA No. 58533, 13 BCA ¶ 35,452 at 173,855. Subsequent written and oral communications with the government created a cloud of uncertainty as to the status of the August 4 termination. The CO's email dated August 11, 2016, stated that "[t]he Government is willing to accept delivery of items under the contract.... You should contact this office...to discuss questions or reasonable proposals concerning the Termination for Cause." (SOF ¶ 6)

It was the government who reached out to AFG in an email dated August 25, 2016, stating, "I am very optimistic that we can work together to develop a solution that benefits all parties" (SOF ¶ 8). Responding to the government's invitation, appellant held three telephonic conferences with the government discussing possible delivery of the terminated paint-booth equipment (SOF ¶ 9). The government repeatedly attempted to discuss "reasonable proposals" concerning delivery with appellant (SOF ¶¶ 6, 8-10). Appellant's affidavit reciting the three teleconferences held on August 25, August 29, and August 31, 2016, is consistent with the telephonic characterizations recited in the CO's demand letter dated September 13, 2016. The CO's September 13, 2016 demand letter acknowledges that the government was willing to enter negotiations. The CO's demand letter states that the government invited AFG to contact the Army to schedule delivery and discuss the same. (SOF ¶ 10)

The evidence shows that the merits of the termination were discussed during the August 25, August 29, and August 31, 2016 teleconferences; in addition, the teleconferences were held to discuss reasonable delivery proposals. At issue for delivery was whether the government would release the final payments to AFG. (SOF ¶ 9) "[I]f a contracting officer wishes to avoid a determination that a decision has been reconsidered he or she 'should refrain from any discussions, negotiations, review of documents or other actions which could be considered to be a *de facto* reconsideration.'" *Guardian Angels Med. Serv. Dogs, Inc. v. United States*, 809 F.3d 1244, 1251 (Fed. Cir. 2016). There is substantial evidence that the government's actions were either in fact a reconsideration or at least reasonably lead AFG to believe the Army was reconsidering the decision based on their emails and telephonic conversations. *See Johnson Controls, Inc.*, ASBCA No. 28340, 83-2 BCA ¶ 16,915 at 84,170.

The Army's willingness to engage AFG, discuss the facts surrounding the termination on three separate occasions and discuss whether AFG would deliver the paint-booth equipment served to keep the matter open and destroyed the finality of the termination notice. *See Guardian Angels*, 809 F.3d at 1249-50.

The government's inclusion of the term "mitigation" in the August 11 and September 13, 2016 emails do not advance the government's position. The government has not shown that it provided clear cautionary notice to AFG prior to

11

each of the three teleconferences that the August 4 termination remained in effect and the discussions were for mitigation purposes only. *See Ra-Nav Laboratories, Inc.*, ASBCA No. 49211, 96-2 BCA ¶ 28,514 at 142,397. The record reflects, and we find, that government actions and statements caused AFG to reasonably believe that the CO was reconsidering her decision.

We find appellant's notice of appeal dated November 8, 2016, and received by the Board on November 8, 2016, was timely.

CONCLUSION

The government's motion to dismiss for lack of jurisdiction is denied.

Dated: July 19, 2018

RICHARD SHACKLEFORD
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

OWEN C. WILSON
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I concur

STEPHANIE CATES-HARMAN
Administrative Judge
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 61026, Appeal of Aerospace Facilities Group, Inc., rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals

13